MATALON PLLC
Joseph Lee Matalon
450 Seventh Avenue, 33rd Floor
New York, New York 10123
(212) 244-9000
  *Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| THOR 725 8TH AVENUE LLC, | Case No. 17-cv-318 (MCA) (SCM) |
| Plaintiff, | |
| -v- | |
| SHANTHIOA GOONETILLEKE a/k/a MARTIN GOONETILLEKE, MARIE GOONETILLEKE, JENNIFER GOONETILLEKE, and BROOKE GOONETILLEKE, | **PLAINTIFF'S LOCAL RULE 56.1 STATEMENT** |
| Defendants. | |

Pursuant to Local Rule 56.1, plaintiff asserts that there is no genuine issue as to the following facts.

1. Plaintiff Thor 725 8th Avenue LLC ("Thor") commenced an action against Martin Goonetilleke ("Martin") [1] and Marie Goonetilleke ("Marie") in the United States District Court for the Southern District of New York on July 2, 2014 ("Action"). (Matalon Cert. Exh. A)

2. The Action sought money damages for breach of a personal guaranty pertaining to a lease for a retail store in Manhattan. (Matalon Cert. Exh. A)

3. Martin and Marie are husband and wife. (Matalon Cert. Exh. K)

---

[1] For ease of reference, and not out of disrespect, plaintiff will refer to each of the defendants by first name, since all have the same surname.

4. Martin and Marie have three children, Jennifer, Brooke and Devin, presently aged 29, 24 and 19 respectively. (Jen. Tr. 8-9; Brooke Tr. 6)

5. All four defendants lived in a house at 278 McCLoud Drive, Fort Lee, New Jersey 07024 ("House") during the Action. (Jen. Tr.106; Answer, Dkt. 10, ¶ 20)

6. The House was acquired by Martin in 1997, while he was married to Marie. (Matalon Cert. Exh. G)

7. The house was transferred back-and-forth several times between Martin and Marie, in various permutations, over the years. (Matalon Cert. Exhs.G, H, I, J; Martin Tr. 46-53, 57)

8. During the Action, Marie was the "sole owner." (Answer, Dkt. 10, ¶ 13; Matalon Cert. Exh. J)

9. On June 12, 2015, Thor moved for summary judgment in the Action. (Matalon Cert. Exh. B)

10. While the motion was pending, Martin and Marie, as Seller, and Jennifer and Brooke, as Buyer, entered into a contract of sale for the House ("Contract"). (Matalon Cert. Exh. L)

11. When it was signed by all four defendants, the purchase price for the House was literally blank and the Contract was undated. (Matalon Cert. Exh. L; Jen. Tr. 107, 109-13; Martin Tr. 66)

12. On October 2, 2015, the court granted Thor's summary judgment motion and found that Martin and Marie were liable to Thor for $2,067,288.99. (Matalon Cert. Exh. C)

2

13. The Contract was then dated October 3, 2015 (i.e., the very next day) and the purchase price of $440,000 was filled in. (Matalon Cert. Exh. M)

14. There was no negotiation over the purchase price. (Jen. Tr. 97; Martin Tr. 68)

15. The purchase price was determined by Marie. (Marie Tr. 41, 51)

16. The Contract recited that there was a "Gift of Equity" of $185,000. (Matalon Cert. Exh. M, ¶ 31)

17. The gift of equity represented the difference between the $440,000 purchase price selected by Marie, and the existing mortgage balance of $255,000. (Jen. Tr. 100; Brooke Tr. 15; Marie Tr. 41, 45)

18. In connection with a mortgage loan applied for by Jennifer, the lender obtained two appraisals. (Jen. Tr. 117)

19. The first appraisal, dated October 22, 2015, determined that the appraised value of the House was $730.000. (Matalon Cert. Exh. N)

20. The second appraisal, dated November 20, 2015, determined that the value was $670,000. (Matalon Cert. Exh. O)

21. On Friday, December 18, 2015, the U.S. District Court, Southern District of New York, entered final judgment in favor of Thor and against Martin and Marie, which included attorneys' fees and interest. The judgment amount was $2,505,325.73. (Matalon Cert. Exh. D)

22. The sale of the House closed on the next business day, Monday December 21, 2015. (Matalon Cert. Exh. K)

23. The December 21 deed from Marie and Martin, as grantors, to Jennifer and Brooke, as grantees, recited that the "transfer is made for the sum of $440,000." (Matalon Cert. Exh. K)

24. However, Jennifer and Brooke did not actually pay any money to Marie or Martin. (Martin Tr. 7; Marie Tr. 43-44)

25. Martin and Marie were insolvent at the time of the transfer (Answer, Dkt. 10, ¶ 24).

26. At the time of the transfer, Brooke "had known that our parents lost all their money. That there was nothing le[ft]." (Brooke Tr. 8)

27. Jennifer made some mortgage payments on the existing mortgage (before the transfer), because her "parents no longer had the funds to pay the mortgage" (Jen. Tr. 128)

28. Martin and Marie continued to live in the House after the transfer. (Jen. Tr. 106)

29. The judgment was affirmed by the Second Circuit on January 11, 2017. (Matalon Cert. Exh. F)

30. The judgment was docketed in New Jersey Superior Court on February 4, 2016. (Matalon Cert. Exh. E)

31. None of the defendants disclosed the challenged transaction to Thor except in post-judgment discovery proceedings.


Dated:  February 15, 2019

*S/ JOSEPH LEE MATALON*
JOSEPH LEE MATALON