UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **THOR 725 8TH AVENUE LLC,**<br><br>*Plaintiff*,<br><br>v.<br><br>**SHANTHIOA GOONETILLEKE a/k/a MARTIN GOONETILLEKE, et al.,**<br><br>*Defendants*. | Civil Action No. 17-318<br><br>OPINION |

**ARLEO, UNITED STATES DISTRICT JUDGE**

**THIS MATTER** comes before the Court by way of Plaintiff Thor 725 8th Avenue LLC's ("Plaintiff") Motion for Summary Judgment against Defendants Shanthioa (also known as Martin) Goonetilleke ("Martin"), Marie Goonetilleke ("Marie"), Jennifer Goonetilleke ("Jennifer") and Brooke Gooetilleke ("Brooke"),[1] ECF No. 64. Defendants Jennifer and Brooke (together, the "Daughters") cross move for summary judgment against Plaintiff, and on their crossclaims against Martin and Marie. ECF No. 71. For the reasons that follow, Plaintiff's motion is granted, and the Daughters' motion is denied.

**I. UNDISPUTED FACTS**

This is an action to set aside the transfer of a family home to the children of judgment debtors the day after the judgment was rendered.

Martin is the former lessee of commercial premises owned by Plaintiff, located at 725 8th Avenue in Manhattan, New York. To obtain favorable lease terms, he and Marie executed a personal guaranty in favor of Plaintiff. Def.'s Statement of Material Facts ("SOMF") ¶¶ 1-2, ECF

---

[1] Defendants Martin and Marie Goonetilleke are husband and wife, and the parents of Jennifer (age 28) and Brooke (age 23) Goonetilleke. They also have one son, Devon Goonetilleke, who is not a party to this action.

No. 74.3. In 2014, Plaintiff sued Martin and Marie in the United States District Court for the Southern District of New York, seeking damages for breach of the personal guaranty. Id. On October 2, 2015, that District Court granted Plaintiff's motion for summary judgment and awarded Plaintiff $2,067,288.99 in damages. Id. ¶ 12.

On October 3, 2015, Martin and Marie entered into a contract to sell their home, a single-family residence located at 278 McCloud Drive in Fort Lee, New Jersey (the "House") to their Daughters. Id. ¶ 13.[2] The contract recited a purchase price of $440,000, of which $185,000 was a "gift of equity." Id. ¶¶ 16, 23. Marie unilaterally determined the purchase price of the House. Id. ¶¶ 14-15. In connection with this transfer, Jennifer applied for a mortgage and obtained two appraisals of the House, one dated October 22, 2015 valuing it at $730,000, the second dated November 20, 2015, valuing it at $670,000. Id. ¶¶ 18-20.

On Friday, December 18, 2015, the New York District Court entered final judgment of $2,505,325.73, including attorney's fees and interest, against Martin and Marie. Id. ¶ 21. The following Monday, December 21, 2015, the sale of the House to Jennifer and Brooke closed. Id. ¶ 22. Martin and Marie continued to live in the House after the transfer.[3] Id. ¶ 28. Martin and Marie admit that they were insolvent at the time they sold the House to Jennifer and Brooke. Ans. ¶ 24, ECF No. 10. Jennifer and Brooke were unaware of the New York litigation at the time of the transfer. Pl.'s Response to Daughters' SOMF ¶ 26, ECF No. 77.[4] Prior to the transfer, Jennifer

---

[2] Defendants purport to dispute Plaintiff's statements concerning when the contract was dated, but do not dispute that "Martin and Marie [] enter[ed] into a contract for sale of 278 McCloud Drive, Fort Lee, New Jersey with Jennifer and Brooke on October 3, 2015." Def. SOMF ¶ 13.

[3] Jennifer testified that Martin and Marie still live in the master bedroom of the House, while she lives in the same room as she did prior to the transfer. Jennifer Dep. at 106, ECF No. 68. She also testified that Martin and Marie do not pay rent, and do not contribute to other household expenses, although Marie does contribute to the grocery bill. Id. at 106, 123.

[4] Plaintiff purports to dispute this fact, but the Court finds that the dispute is not genuine. There is no evidence in the record from which a reasonable jury could conclude that Jennifer and Brooke were aware of the New York litigation or judgment.

made some mortgage payments on behalf of her parents. Def's SOMF ¶ 27. Brooke also testified that she "had known that our parents had lost all their money. That there was nothing left."[5] Id. ¶ 26.

## II. PROCEDURAL HISTORY

Plaintiff docketed the New York District Court judgment in the Superior Court of New Jersey on February 4, 2016. Id. ¶ 30. On January 17, 2017, Plaintiff brought this fraudulent conveyance action against all Defendants, asserting that the transfer of the Home was fraudulent: (1) in violation of N.J.S.A. § 25:2-25, because it was made with "actual intent to hinder, delay or defraud" (Count I), Compl. ¶¶ 29-33, ECF No. 1; (2) in violation of N.J.S.A. § 25-2:27, as Plaintiff was a present creditor at the time of the transaction (Count II), Compl. ¶¶ 34-37; and (3) in violation of N.J.S.A. § 25:2-3, the general fraudulent conveyance provision (Count III), Compl. ¶¶ 38-39. Plaintiff seeks a judgment voiding and setting aside the transfer of the House, a levy of execution against the House, and an award of interest, costs and attorney's fees. Id. ¶¶ 33, 37, 39.

All Defendants answered the Complaint on March 9, 2017. ECF No. 10. On August 4, 2017, the Daughters obtained separate counsel from their parents, ECF No. 18, and on December 14, 2017, the Daughters filed eight crossclaims against their parents, Crossclaims, ECF No. 34. On January 17, 2018, the Daughters also brought a counterclaim against Plaintiff, asserting a single quite title cause of action. ECF No. 42.

The Daughters allege that their maternal grandmother wanted to provide them with financial assistance, including a desire to "set aside money for wedding dowries." Crossclaims ¶¶ 4-6. Beginning in 2003, and until her death in 2008, they allege that she regularly sent Martin money for that purpose. Id. ¶¶ 7, 9. She allegedly sent more than $1.1 million in total. Id. ¶ 8.

---

[5] Defendants purport to dispute this statement to the extent that it implies that Martin and Marie were insolvent at the time of the transfer, but do not dispute that it demonstrates that Brooke was aware of her parents' financial difficulties.

Rather than set the money aside, the Daughters allege that "Martin and/or Marie withdrew the funds and utilized them for their own purposes." Id. ¶ 11.

As against their parents, Jennifer and Brooke assert crossclaims of (1) wasting another's property or inheritance (Crossclaim I), id. ¶¶ 31-34; (2) negligence (Crossclaim II), id. ¶¶ 35-38; (3) common law fraud (Crossclaim III), id. ¶¶ 39-43; (4) common law conversion (Crossclaim IV), id. ¶¶ 44-48; (5) breach of contract (Crossclaim V), id. ¶¶ 49-52; (6) breach of fiduciary duty (Crossclaim VI), id. ¶¶53-59; (7) estoppel (Crossclaim VII), id. ¶¶ 60-64; and (8) a claim for indemnification and contribution under the New Jersey Joint Tortfeasors Contribution Act, N.J.S.A. § 2A:53A, et seq. (Crossclaim VIII), id. ¶¶ 65-66. The Daughters seek compensatory and punitive damages, interest, costs and attorney's fees.

Martin and Marie answered the crossclaims on March 19, 2018, largely admitting the factual allegations against them, although Marie denied that she withdrew any of the grandmother's funds. Ans. to Crossclaims ¶¶ 1-5, ECF No. 48. Martin admitted all allegations in Crossclaims I, II, IV, and VI, Marie admitted all allegations in Crossclaims II and VI. Id. ¶¶ 6-9, 15-18, 24-28.

Plaintiff filed its motion for summary judgment on February 15, 2019, seeking judgment on all counts of its Complaint. ECF No. 64. The Daughters sought summary judgment on their crossclaims and counterclaim the same day. ECF No. 71. As against their parents, the Daughters only seek judgment on Crossclaims I, II, IV and VI against Martin, and on Crossclaims II and VI against Marie. Def. Mem. at 6, ECF No. 71.1.

### III. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), a motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together

4

with available affidavits, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[S]ummary judgment may be granted only if there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." Miller v. Ind. Hosp., 843 F.2d 139, 143 (3d Cir. 1988). All facts and inferences must be construed in the light most favorable to the non-moving party. Peters v. Del. River Port Auth., 16 F.3d 1346, 1349 (3d Cir. 1994).

**IV.　DISCUSSION**

**A.　The Daughters' Procedural Arguments**

The Daughters present two procedural arguments in opposition to Plaintiff's motion for summary judgment. First, they argue that Bank of America (the "Mortgagee"), the holder of the note on Jennifer's mortgage on the House, is a necessary party to this action and Plaintiff's failure to join it should result in dismissal under Federal Rule of Civil Procedure 19. Second, they argue that Plaintiff's failure to file a notice of lis pendens concerning the House should also result in dismissal. The Court disagrees as to both points.

The Mortgagee is not a necessary party to the suit, as this action cannot impair its superior interests in the House. Under Federal Rule of Civil Procedure 19(a)(1), a person who is subject to service of process and whose presence would not deprive the court of subject matter jurisdiction "must be joined as a party" if either the court could not accord complete relief among the existing parties in their absence, or if

> that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may . . . as a practical matter impair or impede the person's ability to protect the interest.

Fed. R. Civ. P. 19(a)(1)(B)(i). Consideration of a Rule 19 motion is a two-step inquiry, requiring the Court to first determine whether a party is necessary under the relevant provision of Rule 19, and then to determine whether joinder is feasible. Gen. Refractories Co. v. First State Ins. Co., 500 F.3d 306, 312 (3d Cir. 2007). In a diversity action, "the question of whether a party is necessary or indispensable is a question of federal law," but determined by reference to the interests of the parties under state law. Huber v. Taylor, 532 F.3d 237, 247 (3d Cir. 2008). To determine whether the Mortgagee has an interest that would be affected by this action, the Court looks to New Jersey law.

Under New Jersey law, Plaintiff cannot disturb the Mortgagee's interest in the House. The two statutes under which Plaintiffs brings its claims prevent it from doing so. Under the Uniform Fraudulent Transfer Act ("UFTA"), the source of Plaintiff's claims in Counts I and II of its Complaint, "[n]otwithstanding voidability of a transfer or obligation," a good faith transferee is "entitled, to the extent of the value given the debtor for the transfer or obligation, to . . . [a] lien or right to retain any interest in the asset transferred." N.J.S.A. § 25:2-30(d). Similarly, under New Jersey's Fraudulent Conveyance Act ("FCA"), the source of the third and final count in the Complaint, "no mortgage, made bona fide and without fraud or covin, and upon good consideration, shall be impeached or impaired by [the FCA], but every such mortgage shall have like force and effect as if this article had never been in effect." N.J.S.A. § 25:2-5; see also Trus Joist Corp. v. Treetop Assocs., Inc., 97 N.J. 22, 30 (1984) (under FCA and predecessor to UFTA, fraudulent conveyance plaintiff could not set aside mortgage unless mortgagee had knowledge of the fraud). Plaintiff's complaint and papers in support of summary judgment would not entitle it to set aside the Mortgagee's interest in the House, as they have not alleged or argued that the Mortgagee was aware of any fraudulent conveyance. Plaintiff concedes that its interest is inferior

6

to the Mortgagee's, which "must have its mortgage lien satisfied before [Plaintiff] receives any proceeds" from the House. Pl. Reply Mem. at 6, ECF No. 79. As Plaintiff's claim would always be inferior to the Mortgagee's, its interest could not be impeded by a judgment for Plaintiff, and is therefore not a necessary party under Rule 19.

The Daughters also argue that they are entitled to summary judgment on Plaintiff's claims because Plaintiff failed to file <u>lis pendens</u> notice concerning the House, as required by N.J.S.A. § 2A:15-6. A notice of <u>lis pendens</u> "has dual purposes. It ensures that a plaintiff's claim related to the property at issue is not defeated by a pre-judgment transfer of the property. It also informs a purchaser of that property that he takes the property subject to the outcome of the litigation." <u>Sevenson Envtl. Servs., Inc. v. McDonald</u>, No. 08-1386, 2009 WL 427402, at *2 (D.N.J. Feb. 20, 2009) (citation omitted). Thus, if anything, Plaintiff's failure to file the <u>lis pendens</u> would have an adverse effect on its own rights, rather than on the Daughters' rights. In any event, the Daughters point to no authority—and the Court could find none—to support their claim that a failure to file a notice of <u>lis pendens</u> should defeat a fraudulent conveyance claim.

### B. Plaintiff's Fraudulent Conveyance Claims

Plaintiff argues that it is entitled to summary judgment on its fraudulent conveyance claims. The Court agrees as to two of the claims.

#### 1. Count I: N.J.S.A. § 25:2-25(a).

Plaintiff first seeks to set aside the transaction as fraudulent under N.J.S.A. § 25:2-25(a), a provision of the UFTA. Under the UFTA, a plaintiff "bears the burden of proving that the transfer was fraudulent by clear and convincing evidence." <u>Nat'l Enters., Inc. v. Wong & Fleming</u>, No. 11-4756, 2012 WL 1079826, at *6 (D.N.J. Mar. 30, 2012). Under Section 25:2-25(a), a

7

transfer by a debtor is fraudulent as to creditor "if the debtor made the transfer . . . [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor." N.J.S.A. § 25:2-25(a).

To determine whether a transfer is a fraudulent conveyance, the Court must make two inquiries. First, it must find that the debtor "'has put some asset beyond the reach of creditors which would have been available to them' at some point in time 'but for the conveyance.'" Gilchinsky v. Nat'l Westminster Bank N.J., 159 N.J. 463, 475 (1999) (quoting In re Wolensky's Ltd. Partnership, 163 B.R. 615, 626–27 (Bankr. D.C. 1993)). Second, it must find that "the debtor transferred property with an intent to defraud, delay, or hinder the creditor." Id. at 476. "New Jersey state law recognizes direct proof of actual fraudulent intent is rare. Instead, a court is guided by state statute to a non-exclusive list of factors, or 'badges of fraud,' for determining actual intent." In re Truong, 285 F. App'x 837, 839 (3d Cir. 2008) (citation omitted). These "badges of fraud" are:

> a. The transfer or obligation was to an insider; b. The debtor retained possession or control of the property transferred after the transfer; c. The transfer or obligation was disclosed or concealed; d. Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; e. The transfer was of substantially all the debtor's assets; f. The debtor absconded; g. The debtor removed or concealed assets; h. The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; i. The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; j. The transfer occurred shortly before or shortly after a substantial debt was incurred; and k. The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

N.J.S.A. § 25:2-26. The Court "should balance the factors enumerated in N.J.S.A. 25:2–26, as well as any other factors relevant to the transaction." Gilchinsky, 159 N.J. at 477. While no single badge of fraud is dispositive, the presence of a single badge "may cast suspicion on the transferor's intent, [and] the confluence of several in one transaction generally provides conclusive evidence of an actual intent to defraud." Id. (finding seven badges of fraud sufficient to grant summary

8

judgment to plaintiff); Truong, 285 F. App'x at 840 (affirming grant of summary judgment to plaintiff where five badges of fraud were present); Pompeo v. Estate of Hudson, No. 11-06899, 2013 WL 2182304, at *8 (D.N.J. May 20, 2013) (granting plaintiff summary judgment where four badges of fraud and a ponzi scheme were present).

Both Gilchinsky inquiries are undisputed here.

First, Martin and Marie's transfer of the House to their Daughters placed it beyond the reach of Plaintiff as creditor. The parties do not dispute that prior to the transfer, Martin and Marie both had an interest in the House. Defs' SOMF ¶ 8. They do not dispute that they contracted to sell the House to the Daughters the day after summary judgment was entered against them in the New York action, id. ¶¶ 12-13, and that the sale to the Daughters closed the next business day after the New York court entered final judgment against Martin and Marie. Id. ¶¶ 21-22. Plaintiff has shown that there is no dispute of material fact that but for the transfer to the Daughters, it would have been able to enforce its New York judgment against the House as an asset belonging to Martin and Marie, its judgment debtors.

Second, Plaintiff has also shown that there is no dispute of material fact as to the presence of five badges of fraud. First, the Daughters are insiders, as they are the children of the debtors, Martin and Marie. See N.J.S.A. § 25:2-22(a)(1) (defining "insider" as "a relative of the debtor"); Def.'s SOMF ¶¶ 3-4. Second, Martin and Marie continued to live in the House after the transfer, retaining possession and control over the transferred property. Def.'s SOMF ¶ 28.[6] Third, Martin and Marie had been sued in the New York lawsuit at the time of the transfer. Id. ¶¶ 1, 13. Fourth, Martin and Marie concede that they were insolvent at the time of the transfer. Ans. ¶ 24

---

[6] Not only did Martin and Marie continue to reside in the House, they continued to reside in the master bedroom after the transfer. Jennifer Dep. at 106.

9

("Defendants admit that Martin and Marie[] were insolvent at the time of the transfer.").[7]  Fifth, the Daughters do not dispute that the transfer of the House occurred shortly after a substantial debt had been incurred, as Martin and Marie contracted to sell the House to their Daughters the day after the New York court granted summary judgment on Plaintiff's claims in that action.  Id. ¶¶ 12-13.

The Daughters raise only one principal defense:  that they took the House as good faith purchasers for a reasonably equivalent value, as the transfer was in partial satisfaction of a debt.  Specifically, they argue that Martin's misuse of funds sent by their maternal grandmother for their benefit created a debt that he owed to them, and that the transfer of the house was in partial satisfaction of that debt.  Daughters' Mem. Opp. at 10, ECF No. 74.

Under N.J.S.A. § 25:2-30(a), a transfer is not voidable under N.J.S.A. § 25:2-25 "against a person who took in good faith and for a reasonably equivalent value."  As this is an affirmative defense, the Daughters bear the burden of establishing both their good faith and that they gave a reasonably equivalent value for the House.  New Jersey Dep't of Envtl. Prot. v. Caldeira, 338 N.J. Super. 203, 224 (App. Div. 2001), rev'd on other grounds, 171 N.J. 404 (2002); UFTA § 8 cmt. 1. (1984) ("The person who invokes this defense carries the burden of establishing good faith and the reasonable equivalence of the consideration exchanged.").

Here, there is a genuine dispute of fact as to whether Martin and Marie owe a debt to their Daughters.  However, this dispute of fact is not material, as the Daughters cannot establish that their parents transferred the House for a reasonably equivalent value.

Because the UFTA is designed to preserve a debtor's estate for its creditors, courts look primarily to the value of what the debtor received to determine reasonable equivalence.

---

[7] The Daughters dispute whether their parents were insolvent at the time of the transfer, Def.'s SOMF ¶ 25, but only dispute this fact as it calls for a response from their parents.  Their parents' answer is controlling.

Motorworld, Inc. v. Benkendorf, 228 N.J. 311, 327 (2017). This is a two-step process: first, the Court must determine whether the debtor received value in exchange for the transfer, and second, the Court must determine whether, at the time of the transfer, the value received was reasonably equivalent to what the debtor gave up. Id. "[A] party receives reasonably equivalent value for what it gives up if it gets roughly the value it gave,' considering the totality of the circumstances surrounding the disputed transfer." Id. at 328 (quoting VFB LLC v. Campbell Soup Co., 482 F.3d 624, 631 (3d Cir. 2007)) (internal quotation marks omitted).[8] The value of what a debtor receives for the transfer is determined by reference to four factors: "(1) whether the value of what was transferred is equal to the value of what was received; (2) the fair market value of what was transferred and received; (3) whether the transaction took place at arm's length; and (4) the good faith of the transferee" as well as the totality of the circumstances. Id. (quoting In re Eckert, 388 B.R. 813, 835 (Bankr. N.D. Ill. 2008)). See also In re Fruehauf Trailer Corp., 444 F.3d 203, 212-13 (3d. Cir. 2006) (applying similar factors to determine "reasonably equivalent value" under federal Bankruptcy Code's fraudulent conveyance provision, 11 U.S.C. § 548(a)(1)(B)). The UFTA's definition of "value" includes having an "antecedent debt [] secured or satisfied" in consideration for the transfer. N.J.S.A. § 25:2-24(a).

Here, the alleged value that Martin and Marie received in exchange for the House was a partial discharge of indebtedness. Marie testified that the transfer of the house to her Daughters reduced her and Martin's debt to them by $185,000, the amount recited as a "gift of equity." Marie Dep. at 46, ECF No. 68.3. As a discharge of indebtedness qualifies as "value" under the UFTA,

---

[8] As the UFTA is a uniform act, under New Jersey law the Court "may consider the law of other jurisdictions that have enacted similar provisions," including other UFTA jurisdictions and analogous provisions of the Bankruptcy Code. Motorworld, 228 N.J. at 325 n.4.

11

N.J.S.A. § 25:2-24(a), the Court must determine whether this discharge was reasonably equivalent to the value of the asset that Martin and Marie transferred.

Nearly all of the factors from <u>Motorworld</u> weigh against finding that this discharge of indebtedness was reasonably equivalent to the value of the House. 228 N.J. at 328. Martin and Marie received a discharge of indebtedness valued at $185,000. Marie Dep. at 46. But the problem with that $185,000 equity amount is that it is far less than the amount of "equity" actually transferred. That $185,000 number is based on a transfer of a house valued at $440,000, close to the amount Martin and Marie paid for the House years earlier. <u>See</u> Matalon Cert. Ex. G at 1, ECF No. 66.6 (showing Martin first purchased the House from a third party for $417,000 in 1997). The parties do not dispute that the appraised value of the house was between $670,000 and $730,000, which means that the "gift of equity" was far greater than the $185,000 amount. Def.'s SOMF ¶¶ 16, 18-20, 23. Thus the first two factors militate against finding reasonable equivalence.

Third, the parties do not dispute that the transaction was not at arm's length, as it was between close family members who all share the same residence, and Marie unilaterally set the purchase price. The final factor, the good faith of the transferees, is neutral. While there is no evidence in the record that the Daughters were aware of the New York judgment at the time of the transfer, they must have known they were obtaining a house for a price substantially below its value.

Because three of these four factors weigh against finding that the House was transferred for a reasonably equivalent value, the Court finds that the value exchanged was not reasonably equivalent. The Daughters have not carried their burden of showing that they qualify as good faith purchasers under N.J.S.A. § 25:2-30(a). Plaintiff is entitled to summary judgment on Count I.

## 2. Count II: N.J.S.A. § 25:2-27

Plaintiff next argues it is entitled to summary judgment on Count II. The Court agrees.

In Count II, Plaintiff seeks to set aside the transfer of the House to the Daughters under N.J.S.A. § 25:2-27, under both subsections (a) and (b). Under subsection (a), a creditor whose claim arose before a transfer may void that transfer "if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time." N.J.S.A. § 25:2-27(a). Plaintiff argues that it is entitled to summary judgment under this provision as there was no reasonably equivalent exchange of value when the House was transferred to the Daughters.

The parties agree that Plaintiff's claim arose before the transfer, Defs.' SOMF ¶¶ 12-13, and Martin and Marie concede they were insolvent at the time of the transfer. Ans. ¶ 24. And as noted above, the Court has concluded that the transfer in question was not for a reasonably equivalent exchange of value. Plaintiff has therefore shown that it is entitled to summary judgment under N.J.S.A. § 25:2-27(a).

Plaintiff has also shown it is entitled to summary judgment under N.J.S.A. § 25:2-27(b), which states that:

> A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

Id. In order to prevail under this subsection, Plaintiff must show that there is no genuine dispute of material fact that: (1) its claim arose before the transfer; (2) that the transfer was to an insider; (3) that the transfer was for an antecedent debt; (4) that the debtor transferor was insolvent at the time of the transfer; and (5) that the insider transferee had reasonable cause to believe that the

13

debtor was insolvent at the time of the transfer. See MSKP Oak Grove, LLC v. Venuto, No. 10-6465, 2016 WL 3566720, at *15 (D.N.J. June 29, 2016) (describing elements).

The Daughters do not dispute any of these elements.[9] They do not dispute that Plaintiff's claim arose before the transfer, Defs.' SOMF ¶¶ 12-13, that they are "insiders," or that Martin and Marie conceded insolvency at the time of the transfer, Ans. ¶ 24. They affirmatively assert that the transfer was in consideration for an antecedent debt. See Def.'s SOMF ¶ 17 ("Martin and Marie agreed to provide a $185,000 'gift of equity' to Jennifer and Brooke to partially settle[] debt owed to Jennifer and Brooke.").

There is also no genuine dispute of material fact as to whether the Daughters had reasonable cause to believe that their parents were insolvent. Jennifer and Brooke each testified that they had reason to believe that their parents were insolvent: Jennifer testified that even before the transfer, she made at least one mortgage payment because her parents "no longer had the funds to pay the mortgage" due to "problems with the business" and that her parents "had some money issues." Jennifer Dep. at 128. She also testified that before the transfer of the house, Marie told her that her parents had used whatever money her grandmother had sent for the business, and that her parents "had nothing le[ft]." Id. at 89. Similarly, Brooke testified that she "had known that [her] parents had lost all their money" and for that reason, they were "willing to sell us the house." Brooke Dep. at 8, ECF No. 68.1. Plaintiff is therefore entitled to summary judgment under N.J.S.A. § 25:2-27(b).

### 3. Count III: N.J.S.A. § 25:2-3

Plaintiff has not shown that it is entitled to summary judgment on Count III. Plaintiff argues that because it is entitled to summary judgment on Count I, which requires a finding of

---

[9] The Daughters never addressed this provision in either their opposition to Plaintiff's motion or in their briefing on their own cross motion for summary judgment.

actual intent to hinder, defraud or delay creditors, the Court should similarly grant summary judgment on Count III. Pl. Mem. at 13 n.6, ECF No. 70. The Court disagrees.

Count III seeks to set aside the transfer under N.J.S.A. § 25:2-3,[10] a provision of the FCA, while Count I was brought under a different statute, the UFTA. Under the UFTA, Plaintiff can show actual fraudulent intent by demonstrating that the badges of fraud in N.J.S.A. § 25:2-26 are present. Plaintiff has not shown that the Court could find intent under N.J.S.A. § 25:2-3 using the same badges of fraud, or by applying them in the same manner. Plaintiff has therefore not shown that it is entitled to summary judgment on this claim.

### C. The Daughters' Motion for Summary Judgment

The Daughters also move for summary judgment on their crossclaims against their parents and on their counterclaim against Plaintiff. Their parents have not filed an opposition to the motion. The Court concludes that they are not entitled to summary judgment against any party.

It is well established that a party seeking summary judgment bears the burden of demonstrating both that there is no genuine issue of material fact, and that "the moving party is entitled to judgment as a matter of law." Anderson, 477 U.S. at 247.

The Daughters do not mention their counterclaim against Plaintiff even once in their brief in support of their motion for summary judgment. They make no attempt to show how any facts are undisputed, or how they are entitled to judgment as a matter of law.

Similarly, as against their parents, the Daughters argue that because their parents have admitted certain allegations against them in their answer to the crossclaims, ECF No. 48, the Court

---

[10] In relevant part, this provision reads: "[e]very conveyance, grant or alienation of real estate, . . . which have been or shall be contrived in fraud, covin or collusion, with intent to hinder, delay or defraud creditors and others of their lawful actions, debts, damages or demands, shall be deemed and taken . . . to be utterly void and of no effect, any feigned consideration, color or other pretense to the contrary notwithstanding." N.J.S.A. § 25:2-3.

should grant their motion for summary judgment. The Court disagrees. The Daughters have not identified how their parents' admissions demonstrate that there are no pertinent disputed issues of material fact, nor do they attempt to show how the absence of disputed facts means they are entitled to judgment as a matter of law. Their motion is therefore denied.

## V. CONCLUSION

For the reasons stated above, Plaintiff's motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**, and the Daughters' motion for summary judgment is **DENIED**. An appropriate order follows.

*/s Madeline Cox Arleo*
**Hon. Madeline Cox Arleo**
**United States District Judge**